UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

SANDRA CROUCH; PATRICIA FITCH;   )     Civil Action No. 5:08-299-JMH
and DEBORAH PERRY,               )
                                 )
     Plaintiffs,              )
                                 )
V.                               )     **MEMORANDUM OPINION AND ORDER**
                                 )
                                 )
RIFLE COAL COMPANY, LLC,         )
                                 )
                                 )
     Defendant.               )
                                 )

\*\*    \*\*    \*\*    \*\*    \*\*

    This matter is before the Court on Defendant's Motion for Summary Judgment [Record No. 29].  Plaintiffs filed a Response [Record No. 35], and Defendant filed a Reply [Record No. 39].  The matter is now ripe for decision.  For the reasons stated below, Defendant's Motion for Summary Judgment will be granted in part and denied in part.

**I. BACKGROUND**

    Defendant Rifle Coal Company, LLC ("Defendant" or "Rifle"), employed Plaintiffs Sandra Crouch ("Crouch") and Patricia Fitch ("Fitch") as "flaggers" on a road construction project in Fleming County, Kentucky (the "Fleming County job").  Plaintiff Deborah Perry ("Perry") was employed on the Fleming County job as an equipment operator.  Plaintiffs are all Caucasian females.

    Plaintiffs allege that Defendant discriminated against them due to their gender and race in violation of 42 USC § 2000e-2(a)(1)

*et seq.* ("Title VII").  Plaintiffs allege that they were subject to less favorable working assignments and conditions than males or African-American females, such as not being allowed to take restroom breaks when needed and not being provided the opportunity to work overtime.  Plaintiffs presented these claims in administrative complaints before the Equal Employment Opportunity Commission (EEOC) and the Kentucky Transportation Cabinet Division of Construction Procurement.  The Complaint in this litigation, however, presented claims of sexual harassment and retaliatory discharge for reporting the disparate treatment to Kentucky Transportation Cabinet investigators.

Plaintiffs present uncontroverted evidence which proves that supervisors and co-workers at Rifle sexually harassed them.  Crouch endured the most severe and pervasive harassment of the plaintiffs. Project foreman Scotty Collins ("Collins") constantly made unwanted advances towards Crouch, attempted to engage her in sexual conversations, and touched her inappropriately.  Collins repeatedly asked Crouch go on a date with him even though Crouch told him "no; I'm married."  [Plaintiffs' Response, Exhibit "A," Crouch Deposition, 15719-21, April 29, 2009, Record No. 35.]  Collins constantly referred to Crouch by the nickname "Elk Ass," both to her face, in the presence of other employees, and over the Citizen's Band ("CB") radios at the job site. [Crouch Dep. 158:9, Record No. 35.]  Collins made many lewd, sexual statements to

Crouch, including: "I want to fuck" "Is your pussy bald or hairy?" and "I don't get pussy at home anymore. I used to get it all the time. Will you give me pussy?" [Crouch Dep. 156:24-157:2, Record No. 35.] Collins made these and similar sexual statements to Crouch on a daily or near-daily basis. [Crouch Dep. 157:12-159:12 and 178:10-11, Record No. 35.] When Collins made these statements to Crouch, she made it clear that his sexual discussions and advances were unwanted, repeatedly telling him, "Don't say those things. I'm married. No. What don't you understand. You're married. Go home. Talk to your wife." [Crouch Dep. 159:16-18, Record No. 35.] Crouch did not engage in lewd or sexual conversation with Collins or any other Rifle employee while employed by Defendant. [Crouch Dep. 159:19-160:7, Record No. 35.] Crouch also makes an assault and battery claim arising from an incident in which Collins cupped her breast, leaving a dirty hand print on her clothing. [Crouch Dep. 177:2-25, Record No. 35] Collins touched Crouch's breasts on other occasions as well by brushing up against her. [Crouch Dep. 177:16-18 and 178:18-23, Record No. 35.] Collins used this "brushing up" maneuver on Crouch as a way to touch her inappropriately on the breast and buttocks repeatedly. [Crouch Dep. 177:16:18 and 178:18-23, Record No. 35.] When Collins engaged in this unwanted physical contact, including the cupping of Crouch's breast, Crouch consistently told Collins, "Stop. Go home. You've got a wife. You need to leave me alone.

3

I'm married.  I'm not interested." [Crouch Dep. 177:16-18 and 178:18-23, Record No. 35.] Shortly before Defendant terminated Crouch's employment, Collins approached Crouch and asked her to "deny every that happened from the part where he had touched [her] . . . and to where his wife had a hairy pussy . . . and to the point where Patty [Fitch] suck [sic] Donnie Gunnel's dick." [Crouch Dep. 176:1-8, Record No. 35.] Crouch informed Collins that, if asked, she would not deny that he had made sexually harassing statements and engaged in inappropriate touching, nor would she deny that she had heard statements others made about Fitch performing oral sex on Rifle project manager Donnie Gunnel. [Crouch Dep. 176:19-25, Record No. 35.]

Crouch's employment with Defendant ended in May 2006.  Collins called Crouch and informed her that Rifle no longer needed her and that she should find another job. [Crouch Dep. 172:14-16, Record No. 35.]

Plaintiff Fitch also endured sexual harassment from Collins. Collins repeatedly told Fitch that he "liked looking at [her] ass." [Pls.' Resp., Ex. "B," Fitch Deposition, 104:24, April 30, 2009, Record No. 35.] Collins also made the same comments to Fitch as he did to Crouch about his wife, her anatomy, and their sex life. [Fitch Dep. 104:22-105:15, Record No. 35.] Rifle employee Donna Gamble frequently joked to Fitch that she would have to engage in oral sex with the project manager, Donnie Gunnel ("Gunnel"), in

order to keep her job. [Fitch Dep. 120:10-14 and 123:25-124:4, Record No. 35.]

Collins also sexually harassed Plaintiff Perry, telling her on multiple occasions, "I bet I'm the only man around [sic] can make you come with one finger." [Pls.' Resp., Ex. "C," Perry Deposition, 98:22-24, May 1, 2009, Record No. 35.] Perry made it clear that this was an unwelcome advance by responding to Collins, "kiss my ass." [Perry Dep. 98:3, Record No. 35]

Plaintiffs frequently discussed Collins' and Gamble's behavior and comments. All three Plaintiffs testified that they discussed Collins' harassment of Crouch and the fact that she was upset, even to the point of tears, by his unrelenting physical and verbal sexual advances. [Fitch Dep. 111:3-4 and 112:23-25; Crouch Dep. 163:7; Perry Dep. 108:19-23 and 110:6-23, Record No. 35.]

During Plaintiffs' employment on the Fleming County Job, a Kentucky Transportation Cabinet investigator visited the work site and asked Fitch and Crouch general questions regarding the job and the working conditions. This visit was prior to the Plaintiffs' complaints. Fitch and Crouch talked with the investigator about some of the problems they were experiencing on the job, such as not being allowed to take breaks. [Crouch Dep. 149:4-10, Record No. 35] Upon finding out that Fitch and Crouch talked to a state investigator, Collins told them that they should not speak with people from the Kentucky Transportation Cabinet about job

conditions, even going so far as to threaten Fitch with termination if she spoke with them again. [Crouch Dep. 153:11-12; Fitch Dep. 153:4-21]

Plaintiffs argue that they endured a hostile work environment, in violation of Title VII, due the continuous and inappropriate sexual comments from Collins and Gamble. Crouch's hostile work environment claims also encompass the unwanted touching by Collins. Plaintiffs Crouch and Fitch filed Complaints with the Kentucky Transportation Cabinet Division of Construction Procurement after their terminations. The Kentucky Transportation Cabinet Division conducted an on-site investigation into Crouch and Fitch's claims of discrimination and sexual harassment. [Pls.' Resp., Exs. "G" and "H," Record No. 35.] The investigation culminated in a determination that "there is probable cause to believe violations of Title VII occurred and will continue to occur" at Rifle. [Pls.' Resp., Exs. "G," Record No. 35.]

Each Plaintiff also filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) after Defendant terminated her employment. Plaintiff Crouch alleged sex and race discrimination as well as sexual harassment in her Charge of Discrimination. [Pls.' Resp., Ex. "I," Record No. 35.] The EEOC determined that Crouch had experienced sexual harassment while employed by Rifle. [Pls.' Resp., Ex. "L," Record No. 35.] Fitch and Perry did not allege sexual harassment in their Charges of

Discrimination and the evidences supports the conclusion that the EEOC did not investigate claims of sexual harassment on behalf of Fitch or Perry.  [Pls.' Resp., Exs. "M," "N" and "Q," Record No. 35.]

The Complaint also sought relief for intentional infliction of emotional distress under state law.  In addition, Plaintiffs make claims for unlawful discharge from their employment with Defendant when they were retaliated against for speaking with the Kentucky Transportation Cabinet investigator regarding job conditions and complaining to management about the same.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no issue as to any material fact, and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party "cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997).  A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  In

considering a motion for summary judgment, the Court must construe the facts in the light most favorable to the nonmoving party. *Id*. at 255.

## III. DISCUSSION

### A. Hostile Work Environment

#### 1. Presentation of Claim to EEOC

Defendant argues that Plaintiffs failed to allege sexual harassment in their complaints with the Equal Employment Opportunity Commission (EEOC), thus failing to exhaust their administrative remedies, and therefore barring these claims.  The Court is not persuaded by this argument as to Crouch and will deny summary judgment based on this argument for Plaintiff Crouch. Plaintiffs Fitch and Perry did fail to exhaust their administrative remedies by not alleging sexual harassment in their Charges of Discrimination to the EEOC and therefore the Court does not have jurisdiction to hear these claims.

##### a.  Crouch

Crouch specifically stated in her Charge of Discrimination with the EEOC that she felt she had been the victim of sexual harassment. [Pls.' Resp., Ex. "I," Record No. 35.]  Defendant admits this fact and the Court finds that this allegation was sufficient to put Defendant on notice that it was being investigated for allegations of sexual harassment which created a hostile work environment.  Although Crouch does not use the words

8

"hostile work environment" in her Charge of Discrimination with the EEOC, the Sixth Circuit adheres to the general rule that "the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Weigal v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002) (citations omitted). The Court in *Weigal* applied the "expected scope of investigation test," which analyzes whether "facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing that claim." *Id.; accord, Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). In *Weigal*, the Court found that an EEOC charge that "implicitly" alleged retaliation, without marking the box for retaliation or explicitly listing it in the plaintiff's statement, was sufficient to "reasonably be expected to lead the EEOC to investigate" the plaintiff's claim of retaliation. *Id.* Likewise, a charge of "sexual harassment" on the Charge of Discrimination certainly put the EEOC on notice to investigate what harassment occurred, the seriousness and frequency of the harassment, the duration of the harassment, and how widespread the harassment was at the workplace. Whether sexual harassment created a hostile work environment is a question of the totality of the circumstances, which is exactly what the EEOC investigated in Crouch's case, finally determining that she was a victim of sexual harassment. *Jackson v. Quanex*

9

*Corp.,* 191 F.3d 647, 658 (6th Cir. 1999) (quoting *Harris,* 510 U.S. at 23). [Pls.' Resp., Ex. "L," Record No. 35.] Crouch's charge of discrimination both put the EEOC on notice to investigate the charges of sexual harassment and a possible resulting hostile work environment, and put Defendant on notice that Crouch had complaints against it for sexual harassment related claims.

### b. Fitch and Perry

Defendants argue that Fitch and Perry did not specifically state that they had been victims of sexual harassment in their Charge of Discrimination to the EEOC and therefore cannot pursue this claim now in federal court.  In both Perry and Fitch's Charge of Discrimination, they allege that they were discriminated against because of their sex.  Both women marked the box indicating that each was complaining of discrimination based on "sex" on the Charge of Discrimination. [Pls.' Resp., Ex. "M," Record No. 35.]  The Charge of Discrimination form does not have a box for "sexual harassment" or "hostile work environment."  Even so, Fitch and Perry failed to allege anything in their Charges of Discrimination that even hinted at sexual harassment.  Neither Defendant nor the EEOC was put on notice to investigate claims of sexual harassment creating a hostile work environment as part of Perry or Fitch's complaints with the EEOC.  The determination letter from EEOC does not indicate that the EEOC investigated sexual harassment as part of Fitch's complaints against Rifle. [Pls.' Resp., Ex. "O," Record

10

No. 35.] Plaintiff did not submit Perry's determination letter as evidence to the Court.  It is clear that neither Perry nor Fitch's Charges of Discrimination alleged sexual harassment, and, there is no evidence that the EEOC investigated any such charges.  "A district court's jurisdiction is 'limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.'"  *Johnson v. Cleveland City School Dist.*, No. 08-4532, 2009 WL 2610833, *5 (6th Cir. Aug. 25, 2009) (quoting *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991)).  Summary judgment will be granted with respect to Fitch and Perry's hostile work environment claims due to this Court's lack of subject matter jurisdiction for Fitch and Perry's failure to exhaust their administrative remedies.

**2.  Crouch's prima facie case of harassment and Rifle's affirmative defense**

"To establish a prima facie case of sexual harassment based on hostile work environment, [Plaintiffs] must adduce evidence demonstrating that" (1) they are members of a protected class; (2) they were subjected to harassment based on their gender; (3) the harassment had the effect of unreasonably interfering with their work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.  *Gallagher v. C.H. Robinson Worldwide, Inc.,*  567 F.3d 263, 270 (6th Cir. 2009)(citing *Grace v.*

11

*USCAR*, 521 F.3d 655, 678 (6th Cir. 2008)).

In this case, taking all of the facts in the light most favorable to the Plaintiffs, Plaintiff Crouch satisfies all four elements of a prima facie case of sexual harassment based on hostile work environment. She is a female, and thus, a member of a protected class. *Id.* The evidence demonstrates that Collins touched Crouch inappropriately, called her sexual names, inquired about her genitals, and repeatedly asked her to date him. This evidence satisfies element (2) because the alleged comments and touching occurred based on Plaintiff's gender. Presumably, Collins would not have been interested in dating Crouch or acquiring other sexual information about her if she was not female.

Element (3) is also satisfied, as the comments and touching were extreme enough to create an offensive work environment. In reaching the conclusion that a hostile work environment did exist for Crouch, the Court has considered the "totality of the circumstances" including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance.' . . . '[t]he conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive.'" *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir.

1999) (quoting *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993) and *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997)). The evidence demonstrates that Collins' extremely lewd and vulgar comments occurred daily or almost daily for months, despite Crouch's protests to Collins. [Crouch Dep. 157:9-25, 159:16-18 and 160:24-25, Record No. 35.]  On one occasion, Collins grabbed Crouch's breast, leaving a hand print on her clothing and causing her embarrassment in front of her co-workers. [Crouch Dep. 176:20-25, 179:15-17, Fitch Dep. 111:3-5, Record No. 35.]  Crouch also testified at her deposition that Collins touched her breast on other occasions and brushed up against her in order to touch her breasts and buttocks.  [Crouch Dep. 177:2-178:23, Record No. 35.] Collins' incessant sexual statements to and inquiries of Crouch, such as, "I want to fuck" and "Is your pussy bald or hairy?" went beyond innuendo or playful sexual banter and bordered on being pornographic in nature.  These comments, coupled with their near-daily frequency, and the unwanted touching of Crouch's breast, created an environment of harassment "severe or pervasive enough" such that a reasonable person in Crouch's position would have found the Fleming County job site "hostile or abusive." *Id.*  Crouch's repeated complaints to Collins about his behavior indicate that she did, indeed, "'subjectively regard that environment as abusive.'" *Id.*  Furthermore, all three Plaintiffs testified that they engaged in conversations about Collins' behavior toward Crouch and how

13

offensive and upsetting Crouch found his treatment of her.   Thus, the third element of a prima facie case of hostile work environment based sexual harassment on is satisfied in this case as to Crouch.

The fourth element of a prima facie case for a hostile work environment based on sexual harassment claim is that Plaintiff must show there is some basis for liability on the part of the employer. The Supreme Court has stated that   "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor . . . ." *Faragher v. City of Boca Raton*, 524 U.S. 775,  807 (1998).   Collins was project foreman, and as such, in a supervisory role over Crouch.   This is clear from the fact that it was Collins who actually dismissed Crouch from employment at Rifle. [Crouch Dep. 172:14-16, Record No. 35.]   Courts have defined "supervisor" as "a person with the power directly to affect the terms and conditions of the plaintiff's employment" such as through termination. *Bryant v. Jones*, 575 F.3d 1281, 1300 (11th Cir. 2009) (citing *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 848 (7th Cir. 2008); *See Stevens v. U.S. Postal Service*, 21 F.App'x 261, 263-264 (6th Cir. 2001).   The evidence shows that Collins was a project foreman, that he occupied a supervisory role over Crouch, as a flagger, and that he had the requisite control over her employment to terminate it.   Therefore, Defendant is vicariously liable to Crouch for Collins' harassment of her.

The fourth element of a prima facie case of a hostile work environment has also been stated as the requirement that the defendant "'knew or should have known of the charged sexual harassment and failed to implement prompt and corrective action.'" *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 251 (6th Cir. 1998)(quoting *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 872 (6th Cir. 1997)(overruled on other grounds)). The evidence is clear that Defendant "knew or should have known" of Collins' harassment of Crouch and failed to take action to correct it. Plaintiff Fitch testified at her deposition that she complained to project manager Donnie Gunnel on multiple occasions regarding Collins' harassment of Crouch. [Fitch Dep. 112:25-113:5, Record No. 35.] Crouch also testified that "everyone" at Rifle heard Collins repeatedly refer her as "Elk Ass" over the CB radios. Plaintiff Perry testified at her deposition that on one occasion Collins broadcast over the CB radio "look, boys, look, there's elk ass, look at her" at a time that Crouch was bent over her cooler. [Perry Dep. 104:12-18, Record No. 35.] Perry also testified that project manager Gunnel admitted his knowledge of the harassment, stating "everybody knows what Scotty [Collins] is; we've talked to him, and we've told him to stay away from the women." Perry testified that Collins' inappropriate behavior never abated.

The Court concludes that Defendant knew or should have known of the severe and pervasive sexual harassment of Crouch at the

Fleming County job site, due to the fact that some of the harassment was broadcast over the company CB radios, Fitch's testimony that she complained about Collins' behavior to Gunnel, and Gunnel's admission to Fitch that he knew "what Scotty [Collins] is" and "told him to stay away from the women" but took no further action to investigate the complaints or otherwise remedy the situation. Considering the totality of the circumstances, it is clear that even if Defendant was not vicariously liable for Collins' sexual harassment (due to his supervisory role), as the Court finds that it is, Defendant is still liable for the harassment because the company "knew or should have known" about it.

A defendant may raise an affirmative defense to a claim of a hostile work environment created by a supervisor by proving by a preponderance of the evidence "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer . . . ," often referred to as the "*Ellerth/Faragher* defense." *Faragher*, 524 U.S. at 807; *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

Defendant argues that the *Ellerth/Faragher* affirmative defense applies here. However, Defendant failed to offer any evidence that

16

can be properly considered on a motion for summary judgment to support the assertion of the *Ellerth*/*Faragher* defense.   Defendant appended an unsigned affidavit from Rifle's Managing Member, Barrett Frederick, to the Motion for Summary Judgment and attached to the affidavit a copy of what Defendant represented as its non-harassment policy.   On a motion for summary judgment "[e]vidence submitted in opposition to [or in support of] a motion for summary judgment must be admissible.   Hearsay evidence must be disregarded." *Alpert v. U.S.*, 481 F.3d 404, 409 (6th Cir. 2007).  The Federal Rules of Civil Procedure require that an affidavit offered in support of a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e).  The unsigned, unnotarized affidavit that Defendant submitted does not qualify as an affidavit that can be considered in ruling on the motion for summary judgment under Rule 56(e).

The Sixth Circuit has ruled on this issue previously, unequivocally stating that "[u]nsigned affidavits do not comply with Fed. R. Civ. P. 56(e)." *Nassif Ins. Agency, Inc. v. Civic Property and Cas. Co.*, No. 03-2618, 2005 WL 712578 at *3 (6th Cir. March 30, 2005); (citing *DeBruyne v. Equitable Life Assurance Soc'y*, 920 F.2d 457, 471 (7th Cir. 1990) and *Mason v. Clark*, 920 F.2d 493, 495 (8th Cir. 1990) ("We have no hesitation in stating

that an unsigned affidavit is not sufficient evidence in support of a motion for summary judgment.")).   The issue of an unsigned affidavit lacking notarization submitted in support of or opposition to a motion for summary judgment has also been addressed in this district.   In a factually similar situation in which the defendant submitted an unsigned, unnotarized declaration, the Court found:

> A court's use of improper Rule 56 evidence is disfavored. *See Moore v. Holbrook*, 2 F.3d 697, 698-99 (6th Cir.1993) (refusing to overturn district court on grounds it had considered improper Rule 56(e) evidence because argument was not raised below but acknowledging such use was error, as documents not meeting requirements of Rule 56(e) must be disregarded).
>
> The deficiency of the Declaration is significant and calls into question the reliability of the facts it purports to assert. Its lack of signature is not a technical deficiency, such as a missing notary seal. Because of the magnitude of the deficiency and the defendant's failure to offer any evidence to support assertions made in the Declaration, the court is hesitant to attach much weight to it. Or, to put it another way, the unsigned declaration is insufficient evidence to overcome the plaintiff's motion for summary judgment.

*Thomas and King, Inc. v. Jaramillo*, No. 08-191-JBC, 2009 WL 649073, *4 (E.D. Ky. 2009) (footnote omitted).

The defects in Defendant's affidavit also affect the attachments to the affidavit.   Rule 56(e) requires that an affidavit "set out facts that would be admissible in evidence."   Some of the facts in the affidavit relate directly to the attachments, including the purported copy of Rifle's non-harassment policy.   However, Federal Rule of Evidence 901 requires that all

documents to be submitted into evidence be authenticated, "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Defendant has not offered any evidence to support a finding that the non-harassment policy attached to the unsigned, unnotarized affidavit is what Defendant purports it to be. Because the policy is not authenticated, it is not admissible evidence. Fed. R. Evid. 901(a)(stating that authentication is a "condition precedent to admissibility."); *See Hartley v. St. Paul Fire & Marine Ins. Co.*, 118 F.App'x 914, 921 (6th Cir. 2004). As noted above, evidence must be admissible to be considered for a motion for summary judgment under Rule 56(e). Fed. R. Civ. P. 56(e); *Alpert*, 481 F.3d at 409. Therefore, because the affidavit is unsigned and its attachments are unauthenticated, the Court will not consider them in ruling on the motion for summary judgment.

The Defendant has, therefore, failed to offer any evidence that the Court can consider to prove by a preponderance that it "exercised reasonable care to prevent and correct" sexual harassment at the workplace as required by the *Ellerth/Faragher* affirmative defense. The Court finds that Defendant failed to meet its burden of proving the *Ellerth/Faragher* defense and, as a result, the Motion for Summary Judgment with respect to Crouch's hostile work environment claim will be denied.

### B. Unlawful Discharge and Retaliation

19

Plaintiffs next aver in the Complaint that they were unlawfully discharged when they complained to Defendant about the alleged discriminatory treatment, an activity protected under Title VII, and that they were subjected to a retaliatory discharge because they spoke with a state investigator regarding the conditions of their employment, also a Title VII-protected activity. Plaintiffs also claim that the unlawful discharge was in retaliation for engaging in protected activities, yet Plaintiffs present these as two separate claims. The Court fails to see any distinction between these two claims in this case, as both relate to Defendant terminating Plaintiffs' employment in retaliation for activities protected under Title VII. Therefore, the Court will treat both the unlawful discharge and the retaliation claims together as one claim for retaliation made by each Plaintiff for the purpose of analysis at the summary judgment stage.

To maintain a claim for retaliation, a plaintiff must prove that: (1) she engaged in Title VII-protected activity; (2) Defendants knew she engaged in the protected activity; (3) Defendants subsequently took an adverse employment action against her; and (4) the adverse action was causally related to the protected activity. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). The burden of establishing a prima facie case is not onerous. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). "Protected activity" includes opposing any

employer practice that is unlawful under Title VII or participating

in a Title VII investigation. *Johnson v. University of Cincinnati*,

215 F.3d 561, 578 (6th Cir. 2000). Temporal proximity may

constitute evidence of a causal connection when:

> an adverse employment action occurs very close in time
> after an employer learns of a protected activity . . . .
> But where some time elapses between when the employer
> learns of a protected activity and the subsequent adverse
> employment action, the employee must couple temporal
> proximity with other evidence of retaliatory conduct to
> establish causality.

*Mickey*, 516 F.3d at 525.

Once the plaintiff establishes her prima facie case, the

burden shifts to the employer to articulate a legitimate,

nondiscriminatory reason for its actions. *Russell v. Univ. of

Toledo*, 537 F.3d 596, 609 (6th Cir. 2008). The plaintiff then must

demonstrate the proffered reason was not the true reason for the

employment decision but was mere pretext. *Id.* (quoting *Morris v.

Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000)). An

employee proves pretext by showing either the proffered reason:

"(1) has no basis in fact; (2) did not actually motivate the

adverse employment action; or (3) was insufficient to warrant the

adverse action." *Ladd v. Grand Trunk Western R.R., Inc.*, 552 F.3d

495, 502 (6th Cir. 2009) (citing *Manzer v. Diamond Shamrock Chems.

Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). "[T]he key inquiry is

whether the employer made a reasonably informed and considered

decision before taking an adverse employment action." *Martin v.*

21

*Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 414 (6th Cir. 2008) (quoting *Smith v. Chrysler*, 155 F.3d 799, 807 (6th Cir. 1998)).

### 1. Crouch

Crouch has failed to make out a prima facie case for retaliation because she has not shown that the termination of her employment was causally related to the protected activity. Crouch engaged in Title VII-protected activity when she discussed working conditions with a Kentucky Transportation Cabinet investigator in or about August 2005, but Crouch's employment was not terminated until May 2006, nine months after the exchange with the state investigator. This is too temporally distant, without "other evidence of retaliatory conduct to establish causality" to show that an exchange between Crouch and the state investigator, which was not face-to-face, but occurred via yelling across a roadway, was the cause of Crouch's termination of employment nine months later. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Crouch offers no evidence connecting her complaints to Collins regarding her work environment to her eventual layoff. The Motion for Summary Judgment with respect to Crouch's claim of retaliation and unlawful discharge will be granted.

### 2. Fitch

Fitch has also failed to make out a prima facie case for retaliation for the same reasons as Crouch. Fitch presents

evidence that Collins told her that if she talked to "state people" (presumably in reference to the Kentucky Transportation Cabinet investigator) again, she would have to "go to the house" (meaning, she would be fired).   [Fitch Dep. 26:16-21, Record No. 35.] However, like Crouch, this incident occurred in or about August 2005, but Fitch's employment with Defendant was not terminated until May 2006, nine months later.  Fitch has failed to show any causal connection between her Title VII protected activity and the layoff that occurred nine months later.  Even the additional evidence of Collins' comments that Fitch would have to "go to the house" if she spoke to state investigators, made close in time to Fitch's conversation with the state investigator, does not causally connect Fitch's complaints to the investigator with her layoff nine months later.  Furthermore, although Fitch offers some evidence that she complained to Defendant's company officials regarding her working conditions, she does not offer any evidence to causally link those complaints with her eventual layoff.  As a result, the Motion for Summary Judgment with respect to Fitch's claim of retaliation and unlawful discharge will be granted.

### 3. Perry

Perry has satisfied the elements of a prima facie case for retaliation.  She engaged in protected activity on numerous occasions when she spoke with the Kentucky Transportation Cabinet employees who were investigating Crouch and Fitch's discrimination

23

claims.  Rifle management was aware of the conversations between
Perry and the state investigators because the conversations took
place openly at the Fleming County job site and because the
management employees questioned Perry about her conversations with
the investigators.  Defendant terminated Perry's employment in
December 2006, after Perry had worked for Defendant for fifteen
years.  This was only a few weeks after the Kentucky Transportation
Cabinet sent Rifle a letter regarding the complaints Crouch and
Fitch made and the subsequent investigation.  The letter stated
that "[b]ased on the evidence reviewed during the investigation,
the Division of Construction Procurement . . . has determined there
is probable cause to believe violations of the Title VII occurred
and will continue to occur . . . ." [Pls.' Resp., Ex. "G," Record
No. 35.]  Viewing the facts in the light most favorable to Perry,
the fact that she was terminated a short time after Defendant
received the letter from the Transportation Cabinet, coupled with
the fact that Rifle management had already instructed Perry not to
speak with the state investigators and that Perry told Rifle
management that, if forced to testify, she would "tell the truth"
about the sexual harassment of Crouch and Fitch, shows a causal
connection between Perry's Title VII protected activity of
participating in a Title VII investigation and her termination from
Defendant's employ.

    Defendant argued that the legitimate, nondiscriminatory reason

24

for Perry's layoff was a reduction in the workforce due to weather conditions and winding down the Fleming County job.[1]   Although Plaintiffs' Response to the Motion for Summary Judgment does not specifically use the word "pretext" to describe the nondiscriminatory reason for Perry's layoff, Plaintiffs clearly make the argument in their Response that this reason was a "pretext."

Perry states that she worked on multiple job sites for Rifle in multiple capacities over the course of fifteen years.  Perry testified that she was told that she was being laid off because the company was reducing its workforce temporarily and that Defendant would call her back to work in a short period if it needed additional workers.  [Perry Dep. 123:18-124:17]  Perry claims that she was never asked to return to work even though work on the Fleming County job continued for approximately one additional year. This offers some additional support for Plaintiffs' argument that "reduction in workforce" "did not actually motivate the adverse employment action." *Ladd v. Grand Trunk Western R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009) (citing *Manzer v. Diamond Shamrock*

---

[1]Defendants submitted a chart which does show a reduction in the workforce on the Fleming County job, particularly beginning in January 2007, the month following Perry's termination, but an increase in the workforce beginning in the spring of 2007.  This chart was attached to Barrett Frederick's unsigned, unnotarized affidavit, and for the reasons stated above in Section III.A.2.a, the Court will not consider this affidavit or its attachments as admissible evidence.

*Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). Viewing the facts in the light most favorable to the Plaintiffs, it appears questionably coincidental that Perry worked on multiple job sites, in multiple capacities, for Defendant over the course of fifteen years, yet Defendant terminated Perry's employment for a "reduction in workforce" soon after she spoke with state investigators, notwithstanding the fact that work on the Fleming County job continued for another year after Perry's termination. [Perry Dep. 123:11-13, Record No. 35.] The Court finds that a reasonable juror could conclude that Defendant's reason for Perry's termination is a pretext. Therefore, a genuine issue of material fact does exist as to whether Perry's layoff was retaliatory and unlawful. The Motion for Summary Judgment with respect to Perry's unlawful discharge and retaliation claims will be denied.

## C. Intentional Infliction of Emotional Distress

Plaintiffs have not demonstrated that they can meet the required elements for a claim of intentional infliction of emotional distress. A claim for intentional infliction of emotional distress has four elements; the second of the four elements is that "the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality . . ." *Morgan v. Bird*, 289 S.W.3d 222, 228 (Ky.App. 2009); *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984). This is a very high standard to satisfy. For example, Kentucky courts

declined to find that a nurse told a patient who had just delivered a stillborn baby to "shut up," or a citizen who erected a billboard in his yard declaring that his neighbor was a child molester, acted outrageously, intolerably or "beyond all decency." *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1,3 (Ky. 1990); *Allen v. Clemons*, 920 S.W.2d 884 (Ky.App. 1996). The Kentucky Supreme Court "stress[ed] that 'major outrage is essential to the tort; the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough.'" *Stringer v. Wal-Mart Stores, Inc.* 151 S.W.3d 781, 791-792 (Ky. 2004)(citing Restatement (Second) of Torts § 46(1) cmt. f (1965)).

The uncontroverted evidence of supervisor and employee conduct at Rifle towards Plaintiffs is extremely distasteful and offensive, however, the alleged conduct amounts to name-calling and vulgar, sexual comments. The conduct is not so "intolerable" that it offends "decency and morality," when it is understood in the context of other decisions regarding claims of intentional infliction of emotional distress.

Furthermore, Plaintiffs appear to have abandoned their intentional infliction of emotional distress claim in footnote nine of Plaintiffs' Response, which states, "It should be noted that Plaintiff withdrew their claim for the intentional infliction of emotional distress during the depositions taken in this case (Crouch depo @ 220-221)." [Pls.' Resp. 17, n.9, Record No. 35.]

As a result of Plaintiffs' failure to meet the requirements for an intentional infliction of emotional distress claim, and their apparent abandonment of the same, the Motion for Summary Judgment with respect to all Plaintiffs' intentional infliction of emotional distress claims will be granted.

### D. Assault and Battery - Sandra Crouch

Crouch's assault and battery claim is barred by the applicable statute of limitations. Kentucky law provides that "[t]he following actions shall be commenced within one (1) year after the cause of the action accrued: (a) An action for an injury to the person of the plaintiff . . . ." KRS 413.140(1). This statute encompasses an action for assault and battery. *Everman v. Miller*, 597 S.W.2d 153 (Ky.App. 1979). Crouch's action accrued at the time of the injury; said differently, her action accrued when the offensive touching occurred, sometime prior to Crouch's layoff on May 8, 2006. The Complaint in this action was filed on July 8, 2008. More than two years passed between the assault and battery and the commencement of this action; therefore, Crouch's assault and battery claim is barred by the statute of limitations in KRS 413.140. The Motion for Summary Judgment with respect to the assault and battery claim will be granted.

### IV. CONCLUSION

Accordingly, **IT IS ORDERED** that the Motion for Summary Judgment [Record No. 29], be, and the same hereby is, **GRANTED IN**

**PART** and **DENIED IN PART** as follows:

(1) The Motion is **GRANTED** with respect to the following claims, which are **DISMISSED WITH PREJUDICE**:

  (a) Fitch's hostile work environment claim;

  (b) Perry's hostile work environment claim;

  (c) Crouch's unlawful discharge claim;

  (d) Crouch's retaliation claim;

  (e) Fitch's unlawful discharge claim;

  (f) Fitch's retaliation claim;

  (g) all claims for intentional infliction of emotional distress; and

  (h) Crouch's assault and battery claim.

(2) The Motion is **DENIED** with respect to the following claims:

  (a) Crouch's hostile work environment claim;

  (b) Perry's unlawful discharge claim; and

  (c) Perry's retaliation claim.

This the 13th day of November, 2009.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge