UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| SANDRA CROUCH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 08-299-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| RIFLE COAL COMPANY, LLC, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

On December 17, 2009, Defendant made an oral and written Motion for Judgment as a Matter of Law, R. 81.  That motion was denied in a bench ruling on December 17, 2009.  This Memorandum Opinion and Order is being issued to state the reasons for denying Defendant's motion.

Moreover, Defendant moved for a directed verdict on the punitive damages, which the jury ultimately found to be $100,000.  The Court indicated that it would consider written pleadings on this issue at a future date.  Before doing so, however, the Court would like to consider the applicable amount of the statutory damages cap in this case under 42 U.S.C. § 1981a.  Such consideration may render the punitive damages issue moot.  Accordingly, the abbreviated schedule discussed in court on December 21, 2009, is set forth herein.

## I.   Standard of Review

Under Federal Rule of Civil Procedure 50(a),

[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a).  "[S]ummary judgment and a motion for a directed verdict under Rule 50 are governed by essentially the same standard."  *F.D.I.C. v. Jeff Miller Stables*, 573 F.3d 289, 299 (6th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)); *see Lewis v. Adams County*, 244 F. App'x 1, 10 (6th Cir. 2007).

A directed verdict (or judgment as a matter of law) is appropriate if, "under the governing law, there can be but one reasonable conclusion as to the verdict.  If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-251 (1986).  To survive a defendant's motion for a directed verdict, a plaintiff must present sufficient evidence such that there is a controverted issue of fact upon which reasonable minds could differ.  "After taking the evidence in a light most favorable to the nonmoving party, a motion for directed verdict may only be granted if it is clear that reasonable people could come to but one conclusion from the evidence."  *Zamlen v. City of Cleveland*, 906 F.2d 209, 214 (6th Cir. 1990) (citations omitted); *see also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 909 (6th Cir. 2004) ("In entertaining a motion for

judgment as a matter of law . . . the court must draw reasonable inferences in favor of the nonmoving party." (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150-51).

## II.   Discussion

### A.   Plaintiff's prima facie case

It is unclear if Defendant was seeking a directed verdict based on Plaintiff's failure to prove her prima facie case; there are no arguments to that effect in Defendant's written motion. *See* R. 81.  In any event, Plaintiff did put forth sufficient evidence from which a jury could conclude she proved her prima facie case.

> To establish a prima facie case of sexual harassment based on hostile work environment, [Plaintiff] must put forth evidence showing that '(1) she is a member of a protected class (female); (2) she was subjected to harassment, either through words or actions, based on sex; (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.'

*Gallagher v. C.H. Robinson Worldwide, Inc.,* 567 F.3d 263, 270 (6th Cir. 2009) (quoting *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008)).

Plaintiff presented sufficient evidence to survive a motion for a directed verdict.  She is a female, and thus, a member of a protected class.  *Id.*  Plaintiff presented evidence that Collins touched her inappropriately, called her sexual names, inquired about her genitals, and repeatedly asked her to date him.  This evidence, taken in the light most favorable to the plaintiff, satisfies element (2) because the alleged comments and touching occurred based on Plaintiff's sex.

Plaintiff presented sufficient evidence on the third element of her prima facie case, that the harassment unreasonably interfered with her work and created an objectively intimidating,

3

hostile, or offensive work environment, such that a reasonable juror could find for Plaintiff on this element. Plaintiff's evidence was that Collins' vulgar comments occurred daily or almost daily for months, despite Plaintiff's protests to Collins, and that he touched her breast. Reasonable jurors could find that Collins's alleged actions were "severe or pervasive enough" such that a reasonable person in Plaintiff's position would have found the Fleming County job site "hostile or abusive." *Id.*

Finally, a plaintiff must show there is some basis for liability on the part of the employer. The undisputed evidence has shown that Collins was project foreman, and as such, in a supervisory role over Plaintiff. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Therefore, Defendant can be held vicariously liable to Plaintiff for Collins' alleged harassment of her.

**B.     Defendant's Affirmative Defense**

During argument and in its briefing, Defendant focused mainly on its affirmative defense and claimed that a reasonable jury could not find for Plaintiff. Plaintiff, however, presented sufficient evidence rebutting Defendant's affirmative defense to survive a motion for a directed verdict. A defendant may raise an affirmative defense to a claim of a hostile work environment created by a supervisor if a defendant proves by a preponderance of the evidence "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer." *Faragher*, 524 U.S. at 804;

4

*see Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742 (1998).

Plaintiff testified that Defendant did not provide her with a copy of Defendant's non-harassment policy, which, if true, may disprove the first element of the affirmative defense. "Generally, an employer satisfies the first part of this two-part standard when it has promulgated and enforced a sexual harassment policy." *Thornton v. Federal Express Co.,* 530 F.3d 451, 456 (6th Cir. 2008). If Plaintiff never received the policy, then she has raised a controverted issue of fact as to whether Defendant promulgated its sexual harassment policy.

Even if Defendant's policy was disseminated, Plaintiff raised questions about the clarity and effectiveness of the policy. "[A]n effective harassment policy should at least: (1) require supervisors to report incidents of sexual harassment; (2) permit both informal and formal complaints of harassment to be made; (3) provide a mechanism for bypassing a harassing supervisor when making a complaint; and (4) provide for training regarding the policy." *Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 349-50 (6th Cir.2005) (citations omitted). When presented with the policy, Plaintiff's witnesses pointed out that, on its face, the policy was not sufficiently clear about how to bypass a supervisor, or who to complain to if the employee was not comfortable complaining to the main office. The policy also did not state how to contact more senior supervisors within the company. Plaintiff's witnesses also testified that there was no training regarding the policy. Finally, the policy seemed to be missing critical words as to what a complainant should do. The policy as Defendant introduced it at trial reads: "If you have a harassment complaint, it is your _____ report such conduct immediately to your supervisor, or, if this is not appropriate, to the main office immediately." R. 29, Ex. 1 at 5. The

5

blank contains enough space for two or three words.  Any words missing from that space would only further explain a complainant's responsibility under the policy.

Defendant presented contrary testimony and evidence, but on a motion for a directed verdict, the Court must view the evidence in the "light most favorable to the nonmoving party," and deny the motion if reasonable people could come to different conclusions from the evidence. *Zamlen,* 906 F.2d at 214.  Defendant urges in its motion that Plaintiff's testimony that she did not see Defendant's policy until after she was laid off is not credible, because Rachelle Frederick testified that she met with Plaintiff on Plaintiff's first day of employment and likely provided Plaintiff with a copy of the policy at that time.  R. 81 at 3.  Defendant also cites other testimony it offered to prove that other Rifle Coal Company employees had copies of the policy and were aware of its contents.  *Id.*  Defendant correctly points out that it offered substantial evidence to rebut Plaintiff's claims and discredit her testimony.  It is inappropriate, however, for the Court to weigh that conflicting testimony on a motion for judgment as a matter of law.

On a motion for a directed verdict, the Court can only consider "whether the evidence is such, without weighing the credibility of the witnesses or considering the weight of the evidence, that there is substantial evidence from which the jury could find in favor of the party against whom the motion is made."  *Coffy v. Multi-County Narcotics Bureau*, 600 F.2d 570, 579 (6th Cir. 1979).  Additionally, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Champion*, 380 F.3d at 900 (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150-51).  After disregarding the testimony of Rachelle Frederick and Defendant's other witnesses, Plaintiff presented sufficient evidence for the jury

to find in her favor.  Plaintiff Sandra Crouch, Deborah Perry, and Patricia Fitch all testified that they did not receive copies of the policy and were unfamiliar with the contents of the policy. This is substantial evidence from which the jury could conclude that Defendant either did not have a non-harassment policy or did not communicate that non-harassment policy to its employees.

Finally, at oral argument Defendant argued that since Plaintiff admitted she knew she could complain, Defendant effectively communicated its policy and satisfied the first part of the affirmative defense.  This conclusion is incorrect.  Although Plaintiff testified that she was aware that she could complain, generally, she also testified that she was unaware of the complaint procedure in the policy.  Whether Plaintiff was aware of the policy and how to make a complaint thereunder goes directly to disproving that Defendant "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *Faragher*, 524 U.S. at 804.  An employee's general awareness that she may complain to her supervisors regarding treatment on the job does not prove that the employee was aware of the existence of a specific policy and the complaint procedure contained therein.  As explained above, to be considered effective, an employer's non-harassment policy must at least explain how formal and informal complaints can be made and how to bypass a harassing supervisor. *Clark*, 400 F.3d at 349-50.  This detailed information goes far beyond a generalized knowledge that Plaintiff could complain.  To gain the benefits of the affirmative defense, Defendant must prove that it effectively communicated the policy. Plaintiff's statement that she knew she could complain because of the "common sense" knowledge that anyone can complain at anytime is simply not a sufficient reason for the Court

7

to take the case away from the jury when viewed in the light most favorable to the plaintiff.

Defendant further argued that Plaintiff had knowledge of the policy but chose not to utilize the reporting procedures, therefore proving the second element of its affirmative defense. R. 81 at 4.  To satisfy the second element of the affirmative defense, Defendant must show that Plaintiff was "unreasonable in failing to use available preventive and corrective measures to avoid harm." *Thornton*, 530 F.3d at 457.  Defendant is correct that fear of retaliation is not an excuse for failure to report.  R. 81 at 4.  However, there are other factors to consider when determining reasonableness.  "[A] reasonable jury could have concluded that [the plaintiff] had rational grounds to refrain from reporting this incident because he was new to the company, had no witnesses, and the harasser was his supervisor." *E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 511 (6th Cir. 2001).  Similarly, even if Plaintiff knew of the policy in place, looking at the facts in the light most favorable to Plaintiff a reasonable jury could find that because she was new to Rifle Coal Company and Collins was her supervisor, Plaintiff's failure to report Collins' behavior was reasonable.

Also under the second element, Patricia Fitch testified that she reported the alleged harassment to supervisor Donnie Gunnell and that no action was taken.  Taking this evidence in the light most favorable to Plaintiff, reasonable minds on the jury could conclude that Plaintiff did report the harassment as required in the non-harassment policy.  Alternatively, reasonable jurors could find that since no action was taken when Patricia Fitch reported Plaintiff's complaint of harassment, it was reasonable for Plaintiff to think that using the policy would be futile.  Though "perceived futility" does not excuse an employee's failure to report supervisor

harassment, *Deters v. Rock-Tenn Co., Inc.,* 245 F. App'x 516, 525 (6th Cir. 2007), actual futility could go to the overall reasonableness of Plaintiff's failure to report.

## III.   CONCLUSION

Plaintiff has presented evidence sufficient that reasonable minds could reach different conclusions based on the evidence, testimony and facts presented.  For the reasons stated above, the motion for judgment as a matter of law, R. 81, was **DENIED**.

Additionally, **IT IS ORDERED** that:

(1)   the parties shall have until **Tuesday, January 19, 2010,** at **5:00 p.m.**, to file any joint statement on the number of employees at Rifle Coal Company for the years 2005, 2006, 2008, and 2009; and

(2)   the Court shall hold a hearing to determine the applicable damages cap under 42 U.S.C. § 1981a on **Monday, February 1, 2010**, at the hour of **10:00 a.m.**, in the United States District Courthouse in **Lexington, Kentucky**.  The parties should be prepared to discuss the factual and legal issues associated with the damages cap.  The parties may, but are not required to, file briefs on these issues prior to the hearing.

This the 21st day of December, 2009.



Signed By:

*Amul R. Thapar*

United States District Judge

9