UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| SANDRA CROUCH, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 08-299-ART |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| RIFLE COAL COMPANY, LLC, ) | **& ORDER** |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The plaintiff, Sandra Crouch, filed a motion for attorney fees and expenses, R. 125, pursuant to 42 U.S.C. § 2000e-5(k). She requests fees and expenses of $136,745 through June 13, 2010. R. 125, R. 133. The defendant, Rifle Coal Company, LLC, ("Rifle Coal") challenged the application and proposed an award of $45,686.25. R. 130. For the reasons stated below, Ms. Crouch will receive **$76,460** in attorney fees and **$2,358.62** in expenses.

## BACKGROUND

On June 16, 2008, Ms. Crouch, along with Patricia Fitch and Deborah Perry, filed a complaint against Rifle Coal in Fleming Circuit Court. R. 1, Ex. A. They each alleged hostile work environment, unlawful discharge, and retaliation discrimination under Title VII. *See id.* They also brought claims for intentional infliction of emotional distress; Ms. Crouch brought a claim for assault and battery. *See id.* Ms. Crouch, Ms. Fitch, and Ms. Perry were represented by Tony Oppegard, a solo practitioner in Lexington, Kentucky. On July 3, 2008, Rifle Coal removed the case to federal court in the Eastern District of Kentucky. R. 1. Judge Joseph Hood granted summary judgment in Rifle Coal's favor on all claims except Ms. Crouch's hostile work

environment claim and Ms. Perry's retaliation claim. R. 40. Before trial, the case was transferred to the undersigned, who granted Rifle Coal's motion to sever Ms. Fitch and Ms. Crouch's jury trials. R. 69.[1]

Ms. Crouch proceeded to trial on her hostile work environment claims. On December 17, 2009, the jury awarded Ms. Crouch $100,000 in punitive damages and $50,000 in compensatory damages. R. 85. Rifle Coal moved for a directed verdict as to the punitive damages. The Court requested briefing on whether 42 U.S.C. § 1981 should limit Ms. Crouch's recovery. R. 87. On February 11, 2010, the parties notified the Court that they had reached a settlement as to Ms. Crouch's damages. R. 107.

The parties jointly moved for an extension of time for Ms. Crouch to file this petition, in the hopes that they could resolve the matter of attorney fees informally. R. 109. After a second extension of time, R. 116, the plaintiff filed a petition for fees through February 12, 2010. R. 125. Ms. Crouch later supplemented her petition for the work performed through May 20, 2010, when she received payment from Rifle Coal. R. 133.

## DISCUSSION

Under Title VII's enforcement provisions, the Court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs . . . ." 42 U.S.C. § 2000e-5(k). The bulk of attorney fee case law comes from claims under 42 U.S.C. § 1988(b), the statute for attorney fees in other civil rights actions. The Supreme Court has

---

[1]  Ms. Perry and Rifle Coal resolved their claims after the jury in Ms. Perry's case was selected on December 21, 2010. R. 88; R. 89.

applied the same analysis to attorney fees under Title VII's fee-shifting provision. *See Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 759 n.2 (1989). Rifle Coal does not dispute that Ms. Crouch is the prevailing party in this lawsuit and thus entitled to fees. *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 835 (6th Cir. 2005) ("[A] plaintiff is a 'prevailing party' when he receives 'at least some relief on the merits of his claim,' even nominal damages." (quoting *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598 (2001))).

## I. Lodestar Analysis

"'The primary concern in an attorney fee case is that the fee awarded be reasonable,' that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). In determining the amount of an attorney fee award, courts begin by calculating the fee applicant's "lodestar," which is the "proven number of hours reasonably expended on the case by an attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). As discussed below, the reasonable hourly rate is $200 and Ms. Crouch reasonably expended 382.3 hours. Thus, the lodestar is $76,460 in attorney fees.

### A. Reasonable Hourly Rate

Ms. Crouch seeks compensation at a rate of $350 per hour for her attorney. R. 125, Ex. 1 at 14. The first step in determining a reasonable rate is to look at the "'the prevailing market

rate in the relevant community.'" *Adcock-Ladd*, 227 F.3d at 350 (quoting *Blum v. Stevenson*, 465 U.S. 886, 895 (1984)). The prevailing market rate is the rate which "lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record[.]" *Id.* (citing *Hudson v. Reno*, 130 F.3d 1193, 1208 (6th Cir. 1997)). For the reasons explained below, the reasonable hourly rate for Mr. Oppegard's work is not $350, as Ms. Crouch suggests, but $200. *See* R. 125, Ex. 1 at 14.

### 1. *Market Rate*

Rifle Coal submits evidence establishing a market rate of $200 per hour. Elizabeth Hughes and JoEllen McComb, attorneys in Lexington, Kentucky, each state that the prevailing market rate sufficient to attract and adequately compensate competent counsel in civil rights actions is $125-$225 per hour. *See* R. 130, Ex. A, Ex. B. Ms. McComb and other members of her firm in Lexington, Kentucky, have sought attorney fees of $175 per hour in civil rights cases over the past three years. R. 130, Ex. A. Ms. Hughes, likewise, has spent a considerable part of her career representing plaintiffs and defendants in civil rights cases. R. 130, Ex. B. A survey of attorney fee awards in the Eastern District of Kentucky also shows this to be a reasonable range. *See Nature Conservancy, Inc. v. Sims*, No. 07-112-JMH, 2009 WL 2382378, at *2 (E.D. Ky. July 30, 2009) (awarding $160 per hour to the case's primary attorney in Lexington); *United states ex rel. LeFan v. Gen. Electric Co.*, No. 4:00-CV-222, 2008 WL 152091, at *3 (W.D. Ky. Jan. 15, 2008) (awarding Louisville hourly rates of $200 to associate attorneys); *Elliott v. Metro. Life Ins. Co.,* No. 04-174-DLB, 2007 WL 4192001, at *5 (E.D. Ky. Nov. 13. 2007) (awarding $150 to $250 per hour to Louisville attorneys); *K.L. v. Scott County Schs.*, No. 5:07-62-JMH,

2007 WL 1875663, at *2 (E.D. Ky. June 28, 2007) (awarding $200 to experienced attorneys in Lexington); *Bryant v. Nighbert*, No. Civ.A.03-183, 2005 WL 2234636, at *3 (E.D. Ky. Sept. 14, 2005) (holding that a reasonable hourly rate in the Eastern District is $150-$225); *McCoy v. Fed. Bureau of Prisons*, No. 03-383-JBC, 2005 WL 1972600, at *3 (E.D. Ky. Aug. 16, 2005) (awarding $200 per hour to a Covington attorney). Thus, these affiants establish the prevailing market rate, and based on their testimony and the aforementioned case law, $200 is a reasonable median within this range.

Ms. Crouch provides three affidavits from members of the Lexington legal community to establish an hourly rate of $350. However, these affidavits fail to explain the prevailing market rate. Affiants Joe Childers and Thomas Miller both state that in their opinions a fee of $350 per hour would be a reasonable hourly rate for Mr. Oppegard. *See* R. 128, Ex. 1, Ex. 2. Affiant Ned Pillersdorf states that $300 to $400 would be a reasonable hourly rate based on his personal experience and knowledge of the legal profession. *See* R. 125, Ex. 4. But none state that $350 is the prevailing market rate for lawyers of comparable skill and experience in Lexington, Kentucky. Ms. Crouch must establish the prevailing market rate, not what individual attorneys see as reasonable based on Mr. Oppegard's work in this litigation.

### 2. *Solo Practitioners*

Additionally, Rifle Coal argues that Mr. Oppegard's hourly rate should be reduced because he is a solo practitioner. R. 130 at 6-10. Mr. Oppegard, Rifle Coal argues, has a lower overhead than attorneys working at a law firm. He also performs work that an attorney would not have to perform if he had support staff. While this could be true, Rifle Coal presents no

evidence that solo practitioners charge less within the prevailing legal market. *See, e.g., Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n,* No. 1:98-CV-479, 2008 WL 906031, at *11 (W.D. Mich. Mar. 31, 2008) (finding the argument that "[s]olo practitioners with no support staff . . . traditionally charge less than attorneys working with other attorneys at a law firm with support staff . . . baseless due to lack of authority or compelling evidence."). Rifle Coal also proposes applying a blended or harmonized rate to all the hours expended. R. 130 at 6-8 (citing *Mogilevsky v. Bally Total Fitness Corp.*, 311 F. Supp.2d 212, 218 (D. Mass. 2004)). But there are few if any hours on Mr. Oppegard's time sheets that clearly fall under the category of paralegal work without further explanation. Without further information and because these hours are such a small portion of the overall work performed in this case, to apply a harmonized (lower) rate to all the hours would not fairly compensate Mr. Oppegard. While the Court could apply paralegal rates to specific tasks that a paralegal would perform, Rifle Coal does not point out any of these tasks.

On the other side of the coin, the Sixth Circuit observed that solo practitioners have no choice but to perform non-legal tasks and approved the district court's decision to fully compensate them. *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005); *see also Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 143 n.6 (2d Cir. 2007) ("While it is true that courts and arbitral panels deciding reasonable fees can and should take into consideration many aspects of an attorney's practice to ensure a reasonable hourly rate, it is long established that 'courts should not automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner.'"). Further, unlike larger law firms, solo

practitioners are limited in their ability to accept other employment, which suggests they should be fairly compensated for the work within their more limited caseload. *Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 374 F.3d 857, 866 (9th Cir. 2004).

Therefore, Ms. Crouch is awarded attorney fees at a rate of $200 per hour for Mr. Oppegard's work.

**B. Hours Reasonably Expended**

Having calculated the reasonable hourly rate, the next question is how many hours Mr. Oppegard reasonably expended on this case. *Hensley*, 461 U.S. at 434. Ms. Crouch seeks compensation for 390.7 hours that Mr. Oppegard worked on her case. R. 125, Ex. 1 at 14-15, R. 133, Ex. 1 at 5. The overarching concern in calculating hours is "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996) (quoting *Hensley*, 461 U.S. at 435). For the reasons explained below **8.4** hours are excluded. Thus, Mr. Oppegard reasonably expended **382.3** hours.

Mr. Oppegard will not be compensated for his hours spent moving for extensions of time. These extensions on almost every deadline, usually after it already passed, served only to delay the litigation and increase fees on both sides. Since these 3.7 hours[2] were "excessive, redundant,

---

[2] The 3.7 hours spent moving for extensions include: 1.2 hours on March 3, 2009, to review Rifle's motion to compel and draft plaintiffs' response; 1.1 hours on May 15, 2009, to draft and file motion to continue trial and to extend discovery and other deadlines; .2 hour on May 18, 2009, to review Rifle's response in opposition to motion to continue; .7 hour on September 29, 2009 to draft and file motion for extension of time to respond to motion for summary judgment; .5 hour on January 31, 2010, to draft a motion for extension of time to file statement regarding number of employees. *See* R. 125, Ex .1.

7

or otherwise unnecessary," the Court will exclude them from Ms. Crouch's recovery. *Hensley*, 461 U.S. at 434.

On July 10, 2009, Mr. Oppegard billed 7 hours drafting interrogatories and requesting documents for all three plaintiffs rather than just for Ms. Crouch. R. 125, Ex. 1 at 8. Rifle is correct that Mr. Oppegard cannot collect attorney fees for his work on Ms. Perry and Ms. Fitch's cases. Though these discovery requests for the three women's cases may have overlapped, Ms. Crouch does not explain why she should receive compensation for what appears to be joint work. Ms. Crouch will receive one-third of this amount, or 2.3 hours for this time (a reduction of 4.7 hours).

Having reviewed Mr. Oppegard's fee petition the Court finds that the hours he expended, other than the reductions already discussed, are reasonable.[3] Rifle Coal objects to payment for the time that Mr. Oppegard spent traveling. It is incorrect. District courts have the discretion to determine the local practice regarding payment for travel time. *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991). Neither side presents evidence of what the local practice is within Kentucky. Other courts in this district have awarded attorney fees for travel time. *See, e.g., Amburgey v.*

---

[3] Although Ms. Crouch originally brought several claims and only obtained relief on one of them, she is still entitled to recover attorney fees for the work on the other claims because all of the claims were related. The Supreme Court in *Hensley* expressly forbid a district court from determining fees based on the success or the failure of individual claims when the claims arise from a common core of facts or related legal concepts. 461 U.S. at 448; *cf. Deja Vu of Nashville v. The Metro. Gov't. of Nashville and Davidson County, Tenn.,* 421 F.3d 417, 423 (6th Cir. 2005) ("[A] court should not reduce attorney fees based on a simple ratio of successful claims to claims raised." (quoting *Thurman*, 90 F.3d at 1169)). Instead, "when claims are based on a common core of facts or are based on *related* legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." *Thurman*, 90 F.3d at 1169.

*Astrue,* No. 08-335-GWU, No. 99-507-JBC, 2010 WL 567324, at *1 (E.D. Ky. Feb. 12, 2010); *ACLU of Ky. v. McCreary County, Ky.*, 2009 WL 720904, at *4 (E.D. Ky. 2009); *Anderson v. Wilson*, 357 F. Supp.2d 991, 1000 (E.D. Ky. 2005). Rifle Coal points to a case from the Western District of Kentucky that notes attorneys should be compensated fully for their time when productive legal work is performed. *ACLU of Ky., Inc. v. Grayson County, Ky.*, 4:01-CV-202, 2008 WL 5101672, at *3 (W.D. Ky. Nov. 26, 2008). But that case does not explain what to do when productive legal work is *not* performed during travel. Without a sound reason to the contrary, Ms. Crouch should receive attorney fees for Mr. Oppegard's travel time.

Still, like all other parts of the fee award, the travel time fees must be reasonable. Mr. Oppegard is located in Lexington and Ms. Crouch in Salt Lick; the Court takes notice of the fact that these places are approximately 55 miles or an hour travel time apart. Ms. Crouch asks for 20.8 hours of travel time. This includes seven round-trips from Lexington to meet with Ms. Crouch and one trip to Flemingsburg to file the state court complaint. *See* R. 125, Ex. 1. Based on the length of this litigation and the number of trips made, this number reflects a reasonable amount of time spent consulting with a client throughout the course of the case. Thus, the hours for travel time will be awarded in full.

Rifle Coal challenges Mr. Oppegard's entry for fourteen hours of preparation for mediation between March 25, 2008, and April 20, 2008. R. 130 at 12. This preparation was not in poor judgment. *Cf. Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986) (stating that a court may strike hours if a lawyer used "poor judgment in spending too many hours on some part of the case"). The parties spent half a day in mediation prior to the filing of the complaint and

before any discovery had taken place. R. 125, Ex. 1 at 4 (April 21, 2008, mediation session with Pierce Hamblin). Counsel correctly took a considerable amount of time to prepare for a mediation that could have avoided litigation entirely if successful. And as Rifle Coal states itself, Mr. Oppegard has limited experience in areas of Title VII litigation. R. 130 at 5. He spent time calling other attorneys and researching Title VII awards for injuries similar to Ms. Crouch's. R. 125, Ex. 1 at 2-4. At that stage of the litigation, such lengths of preparation were reasonable.

Rifle disputes Mr. Oppegard's 12.3 hours spent reviewing and outlining the depositions of Ms. Crouch, Ms. Perry, and Ms. Fitch on October 14, 2009. R. 130 at 13. Since these depositions constituted the bulk of the plaintiff's proof in her case, it was not unreasonable for Mr. Oppegard to spend such time reviewing them.

After deducting 8.4 hours—the 3.7 hours spent seeking extensions of time and the 4.7 hours for interrogatories—Ms. Crouch's petition includes 382.3 hours. Having reviewed all the hours and calculated the reasonable hourly rates of $200 for Mr. Oppegard, the lodestar figure for attorney fees is: $76,460.

## II. Expenses

Ms. Crouch requests $2,358.62 for other expenses. R. 125, Ex. 1 at 15. There are two separate sources of authority to award out-of-pocket expenses. *Sigley v. Kuhn*, Nos. 98-3977, 99-3531, 2000 WL 145187, at *9 (6th Cir. Jan. 31, 2000). Expenses include incidental and necessary expenses incurred in furnishing effective and competent representation, and costs incurred by a party to be paid to a third party. *Id.* Both are recoverable in the Court's discretion. Ms. Crouch asks for reimbursement of her filing fee, the cost of depositions and mediation, and

Mr. Oppegard's travel mileage. Rifle Coal does not challenge any of Mr. Oppegard's expenses. These are reasonable, and thus, the plaintiff is awarded $2,358.62 in expenses.

## CONCLUSION

For the reasons explained above, the Court awards Ms. Crouch **$76,460** in attorney fees and **$2,358.62** in expenses. The motion, R. 125, and supplemental motion, R. 133, are **GRANTED IN PART** and **DENIED IN PART**.

This the 26th day of July, 2010.

Signed By:
*Amul R. Thapar*
United States District Judge